HARRISON JOHNSON, MARGARET WILBER AND LOCAL 1199, DRUG AND HOSPITAL EMPLOYEES UNION, PLAINTIFFS-RESPONDENTS, v. CHRIST HOSPITAL, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued June 1 and 3, 1965—Decided June 21, 1965.

Mr. *Thomas L. Morrissey* argued the cause for appellant (*Miss Virginia D. Fenton,* on the brief; *Messrs. Carpenter, Bennett & Morrissey,* attorneys).

Mr. *Sidney Reitman* argued the cause for respondents (*Messrs. Kapelsohn, Lerner, Leuchter & Reitman,* attorneys).

Mr. *Julius B. Poppinga* argued the cause for New Jersey Hospital Association, *amicus curiae* (*Mr. Woodruff J. English,* of counsel; *Mr. Alfred L. Ferguson,* on the brief; *Messrs. McCarter & English,* attorneys).

The opinion of the court was delivered

PER CURIAM. The judgment is affirmed for the reasons expressed by Judge Matthews in the Chancery Division of the Superior Court. 84 *N. J. Super.* 541 (*Ch. Div.* 1964).

In summary we hold:

1. Employees of nonprofit hospitals are persons in private employment within the meaning of *Article* I, ¶ 19 of the New Jersey Constitution.

2. As such employees, they have the right to organize and to bargain collectively with nonprofit hospital employers through representatives of their own choosing, such as labor unions, with respect to wages, hours and conditions of employment.

3. Nonprofit hospital employers are obliged to bargain collectively with properly chosen representatives of their em-

ployees with respect to wages, hours and conditions of employment.[1]

■ 4. Nonprofit hospital employers and the properly chosen representatives of their employees are obliged to bargain in good faith with the objective of achieving mutual understanding and agreement as to wages, hours and conditions of employment. Good faith bargaining includes an awareness on the part of both parties of the special nature of the enterprise in which they are engaged, and of the special relation each bears to the public.

5. The right of the nonprofit hospital employees to picket or to strike is not an issue in the case before us. Nor does the case present this problem: If such a right exists, in view of the unusual nature of the public interest in unimpeded operation of non-profit hospitals, can and should the courts impose conditions precedent to, or qualifications on, exercise of the right so as to protect within fair and sensible limits the lives and health of the patients? Accordingly, we reserve these questions until they are specifically before us in a live controversy.[2]

---

[1] As the opinion below indicates, these rights are intrenched in *Article* I, ¶ 19 of the 1947 *Constitution*. This article, cast as it is in general terms, has not been implemented by the Legislature. But as this Court made plain in *Independent Dairy Workers Union of Hightstown v. Milk Drivers and Dairy Employees Local No.* 680, 30 *N. J.* 173, 181–183 (1959); Note, 19 *Rutgers L. Rev.* 569 (1965), the courts would be derelict in the discharge of their historic function if they allowed a right so created to fail for lack of a means of enforcement. The many administrative problems incident to effectuation of the right appeal for legislative intervention and regulation. As the Chief Justice suggested in the *Independent Dairy Workers* case, such action would be welcome. 30 *N. J.*, at *p.* 181. Until legislation is enacted, however, the courts must be equal to the task of formulating and effectuating a fair pattern of labor-management relations in cases like the present one—whatever the specific problem involved.

[2] There appears to be general agreement that strikes of hospital employees would have a worrisome tendency to impair the safety and welfare of the patients, and persons relying on the availability of the hospital facilities. *Western Pennsylvania Hospital v. Lichliter*, 340 *Pa.* 382, 17 *A.* 2d 206, 132 *A. L. R.* 1146 (*Sup. Ct.* 1941); *St. Luke's Hospital v. Labor Relations Commission*, 320 *Mass.* 467, 70

■ 6. In the present state of the law the courts have the general power and the duty to determine justiciable labor disputes between nonprofit hospitals and their employees. At the same time we recognize that it is more expedient to have the day-to-day problems arising out of disputes concerning wages, hours and conditions of employment regulated by over-all legislation, than for the courts to set about the establishment of procedural and substantive precedents on a case-to-case basis.

N. E. 2d 10 (Sup. Jud. Ct. 1946). Hospital workers are in a sense like those in the employ of a public utility; they have a special and sensitive relation to the public welfare. Their employers are in the business of saving lives. It is recognized, too, that lack of profits in nonprofit hospitals imposes difficulties on the bargaining process, a factor which cannot be ignored on the one hand, nor relied upon unrealistically on the other. It is true that such hospitals are supported in large measure by charitable contributions. But ordinarily the hospital employee is not free economically to give or withhold his labors as charity.

Fourteen states and Puerto Rico have adopted general labor relations statutes: Colo. Rev. Stat. Ann. §§ 80–5–1 to 22 (1953) ; Conn. Gen. Stat. Ann. §§ 31–101 to 111 (1961) ; Hawaii Rev. Laws §§ 90–1 to 19 (1955) as amended (Supp. 1963) ; Kan. Gen. Stat. Ann. §§ 44–801 to 817 (1964) ; Mass. Gen. Laws Ann. ch. 150A, §§ 1 to 12 (1957) as amended (Supp. 1964) ; Mich. Stat. Ann. §§ 17.454(1) to (27) (1960) ; Minn. Stat. Ann. §§ 179.01 to .29 (1947) ; N. Y. Labor Law §§ 700 to 716; N. D. Cent. Code §§ 34–12–01 to 14 (Supp. 1963) ; Ore. Rev. Stat. §§ 651.010 to .990, §§ 661.010 to .990, §§ 662.010 to .990 (1963) ; Pa. Stat. Ann. tit. 43, §§ 211.1 to .13 (1964) ; R. I. Gen. Laws Ann. §§ 28–7–1 to 47 (1956) ; Utah Code Ann. §§ 34–1–1 to 34 (1953) as amended (Supp. 1963) ; Wis. Stat. Ann. §§ 111.01 to .19 (1957) as amended (Supp. 1959) ; P. R. Laws Ann. tit. 29, §§ 61 to 76 (1955) as amended (Supp. 1963).

In several of these states nonprofit hospitals are not covered by the labor relations statutes. In Connecticut, North Dakota, Rhode Island and Utah, they are excepted expressly by the statute from the obligation of collective bargaining. Conn. Gen. Stat. Ann. § 31–101(7) (1961) ; N. D. Cent. Code § 34–12–01(2) (Supp. 1963) ; R. I. Gen. Laws Ann. § 28–7–45 (1956) ; Utah Code Ann. § 34–1–2 (Supp. 1963). New York is unique. Only nonprofit hospitals in large cities are brought under the statute. N. Y. Labor Law § 715(3) (b) and § 701(11). They are under a duty to bargain. N. Y. Labor Law § 704(6). Strikes are banned and compulsory arbitration may be invoked. N. Y. Labor Law § 713 and § 716. Oregon employers are under a general duty to bargain collectively, Ore. Rev. Stat. § 662.515

Some comment should be made about an additional point raised by the hospital. The trial court ordered a representation election to be held after a fixed period for informational and organizational activity. He specified rather generally that such activity might be directed to all employees except professional employees and those having supervisory duties. Implicit in this classification is that employees to whom such activity might be directed should form the bargaining unit and be entitled to vote in the election. The hospital complains

---

(1963) ; hospitals are not exempted. The statute specifically makes it an unfair labor practice to refuse to bargain with nurses, *Ore. Rev. Stat.* § 662.735 (1963), but nurses are not allowed to "participate in or cause a strike or work stoppage against or directly involving a health care facility," *Ore. Rev. Stat.* § 662.725 (1963). In Colorado, Massachusetts and Pennsylvania, the courts have ruled that such hospitals are not employers within the meaning of the acts, *St. Luke's Hospital v. Industrial Commission,* 142 *Colo.* 28, 349 *P. 2d* 995 (*Sup. Ct.* 1960) ; *St. Luke's Hospital v. Labor Relations Commission, supra* ; *Western Pennsylvania Hospital v. Lichliter, supra* ; strikes were declared to be incompatible with the employees' duty to the public and the patients. Later, however, hospitals were made "employers" under the Massachusetts Labor Relations Act, and strikes were banned. *Mass. Gen. Laws Ann. ch.* 150A, § 2(2) and § 4C(2) (Supp. 1964).

The labor relations statutes are or appear to be applicable to nonprofit hospitals in the other five states and Puerto Rico, thus making collective bargaining obligatory. Michigan and Minnesota, however, have special dispute settlement procedures, the former (*Mich. Stat. Ann.* § 17.454 (14.2 to 14.8) (1960)) similar to the New Jersey legislation concerning public utilities (*N. J. S. A.* 34:13B–1 to 27), and the latter (*Minn. Stat. Ann.* § 179.35 to .39 (Supp. 1964)), which prohibits strikes and lockouts, provides for compulsory arbitration if efforts at voluntary settlement fail. In Wisconsin the Employment Peace Act extends to all employers, including nonprofit hospitals, *Wisconsin Employment Relations Board v. Evangelical Deaconess Society,* 242 *Wis.* 78, 7 *N. W. 2d* 590 (*Sup. Ct.* 1943), and requires good faith bargaining. *Wis. Stat. Ann.* § 111.06(2)(d) (1957). The statutes of Kansas and Hawaii have not been interpreted by the courts but appear to subject nonprofit hospitals to the duty to bargain collectively ; the same situation obtains with respect to the Puerto Rico act. See statutes cited *supra* ; Hepton, "Battle for the Hospitals," *Bulletin* 49, New York State School of Industrial and Labor Relations, Cornell, 1963 ; Kochery and Strauss, "The Non Profit Hospital and the Union," 9 *Buffalo L. Rev.* 255 (1959) ; 19 *Rutgers L. Rev.* 569, 571 (1965).

that the composition of the appropriate unit was not tried out. It appears to suggest principally that the particular employees who should fall into the excluded class was not determined and that it did not have the opportunity to present evidence on the details of this subject. It seems to us that if any real difficulty develops along this line during the organizational period, either party is free to present the question to the trial court for determination before the election is held.

The judgment is affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For reversal*—None.