122 N.J. Super. 260 (1973)
300 A.2d 173
LAY FACULTY ASSOCIATION OF REGIONAL SECONDARY SCHOOLS OF THE ARCHDIOCESE OF NEWARK, PLAINTIFF-RESPONDENT,
v.
ROMAN CATHOLIC ARCHDIOCESE OF NEWARK, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 25, 1972.
Supplemental argument held on January 9, 1973.
Decided February 2, 1973.
*264 Before Judges LABRECQUE, KOLOVSKY and MATTHEWS.
Mr. Patrick Vaccaro, of the New York bar, admitted pro hac vice, argued the cause for appellant (Messrs. Fox, Schackner, Neagle & Mastrangelo, attorneys; Mr. Thomas H. Gassert, of counsel and on the brief).
Mr. Michael F. Walsh, of the Pennsylvania bar, admitted pro hac vice, argued the cause for respondent (Messrs. Meyner and Wiley, attorneys; Mr. Edwin C. Landis, Jr. on the brief).
The opinion of the court was delivered by KOLOVSKY, J.A.D.
The final judgment entered herein on July 22, 1971
ORDERED that, upon demand by plaintiff in writing, the defendant shall bargain collectively as to wages, hours, and working conditions with the plaintiff, which is hereby certified as the sole and exclusive bargaining agent for the full-time professional lay teachers, librarians and guidance counselors in the 13 regional high schools operated by defendant.
Defendant appeals.
On filing of plaintiff's verified complaint an order to show cause issued. Plaintiff served notice that it would move to proceed summarily. R. 4:67-2(b). The complaint alleged that plaintiff represented a majority of the "lay faculty members" in defendant's secondary schools in Essex, Bergen, Hudson and Union Counties; that it had offered to demonstrate such representation to defendant and had requested that defendant meet with it for the purposes of collective bargaining; that, in violation of Article I, Paragraph *265 19 of the 1947 New Jersey Constitution, defendant had refused to bargain collectively with plaintiff; and that
7. Plaintiff is unable to obtain relief or remedy from the National Labor Relations Board because defendant is not an employer within definition of the National Labor Management Relations Act and regulations appended thereto.
The relief prayed was a judgment "ordering defendant to bargain collectively with plaintiff or to participate in a representation election as soon as possible." Cf. Johnson v. Christ Hospital, 84 N.J. Super. 541 (Ch. Div. 1964), aff'd 45 N.J. 108 (1965).
A second count sought to restrain defendant from proffering contracts to individual lay faculty members until such time as collective bargaining between plaintiff and defendant had been completed.
On the return day of the order to show cause, April 30, 1971, defendant submitted an answering affidavit of its assistant superintendent of schools and plaintiff filed a reply affidavit. In pertinent part the affidavit submitted by defendant read as follows:
The Archdiocese has never contested the right of teachers to either organize or present their proposals through representatives of their own choosing. Quite the contrary. The Archdiocese entered into agreements with the Lay Faculty Association [hereinafter L.F.A.] in behalf of its teacher members for the school year 1969-70 and the school year 1970-71. The Archdiocese has honored these contracts and this is not controverted.

* * * * * * * *
[A meeting scheduled for January 5, 1971 to discuss a contract for the 1971-1972 school year was called off by plaintiff and was not held until March 3, 1971.]
* * * it soon became evident that L.F.A. would refuse to discuss their proposals in good faith. For the first time they asserted the right to serve as the sole and exclusive representative for all lay persons engaged in professional duties in thirteen secondary schools exclusive of Principals, Vice-Principals and persons employed on a part-time basis.

* * * * * * * *
I am advised that L.F.A. is not entitled to sole and exclusive representative status. The facts establish that it does not represent *266 a majority, witness the Newsletter * * * issued on March 22, 1971. Further, many of the agency appointment cards are suspect in view of the circumstances under which they were procured. * * *
Even assuming that L.F.A. could establish that it represents a majority of the lay teachers it is nevertheless not entitled to sole and exclusive status as representative of all the teachers. I have already indicated we have at all times been ready and willing, now as in the past, to review proposals submitted by L.F.A. and enter into a contract with it in behalf of its teacher members.

* * * * * * * *
The Affidavit of the plaintiff [¶ 15] takes the position that whatever rights the plaintiff may have flow from the case of Johnson v. Christ Hospital. This case is clearly distinguishable from our situation. We have not at any time disputed the right of our teachers to organize and have, in fact, entered into contracts with L.F.A. in behalf of its teacher members.
I am aware there is no legislation in the State of New Jersey to guide the Court and that the Court will, therefore, be called upon to exercise its discretion under all the circumstances. While we are not `public employers' in the literal sense, we most certainly must be considered quasi-public institutions in the operation of our schools. Neither the Constitution nor Johnson create the right in L.F.A. to serve as sole and exclusive representative for those by whom it has not been chosen to act. The constitutional rights of those who do not desire to be represented by L.F.A. have a right to be protected as much as those who choose to be represented by L.F.A. The Court, I am certain, will therefore take judicial notice of the vital public interest in continuing our schools without interruption.
Argument on the issues raised by the conflicting affidavits took place on three separate days, with the primary dispute involving the question whether plaintiff represented the majority it claimed. To resolve that question, the court entered its order of May 13, 1971 directing that a representation election be conducted on June 4, 1971. The body chosen by the court to conduct the election was defendant's nominee, the Honest Ballot Association. (Plaintiff had nominated the New Jersey State Board of Mediation.)
Among the provisions regulating the election embodied in the order of May 13, in addition to details relating to the voting and polling procedures, were:
A. * * *
4. Those eligible to vote shall be all full-time lay teachers, degreed librarians and guidance counselors, of the defendant's 13 regional *267 secondary schools, who are employed on the last payroll period prior to the signing of this Order, except as hereinafter provided.
5. All Principals, Vice Principals, part-time teachers, nurses and all other personnel not specifically mentioned in paragraph 4 shall be excluded from voting. Ballots of teachers, librarians and guidance counselors shall be segregated and reported separately by the Board, subject to determination by the Court as to the appropriate bargaining unit.

* * * * * * * *
B. The question of whether plaintiff shall be the sole and exclusive bargaining representative for all those in the unit found to be appropriate, is hereby reserved for decision by the Court after hearing and with full opportunity to present Briefs on the question.
The court's subsequent order of May 27, 1971, entered pursuant to directions given by the Supreme Court when it on May 26, 1971 vacated an Appellate Division stay of the election, provided for a further separate tabulation, that of "the votes of any full time lay teachers, degreed librarians and guidance counsellors who will not be re-employed for any reason for the 1971-72 school year."
The representation election was held on June 4, 1971 and the certification thereof filed by the Honest Ballot Association showed the following breakdown of the votes cast by each category of employees on the question, "Do you wish to be represented for purposes of collective bargaining by  Lay Faculty Association?":
 LAY TEACHERS (315 votes)
 Yes 198
 No 116
 Blank 1
 LAY TEACHERS LEAVING SYSTEM (70 votes)
 Yes 60
 No 9
 Blank 1
 RELIGIOUS TEACHERS (128 votes)
 Yes 11
 No 117
 GUIDANCE COUNSELLORS (24 votes)
 Yes 11
 No 13
 LIBRARIANS (9 votes)
 Yes 4
*268
 No 4
 Blank 1
 LIBRARIANS NOT IN SYSTEM (2 votes)
 Yes 1
 No 1
Following a pretrial conference, the matter came on for trial and resulted in the judgment appealed from. The trial court granted defendant's application for a partial stay of judgment pending appeal so that any contract agreed on between plaintiff and defendant would be binding only on defendant and such of its employees as were members of plaintiff association.
The various aspects of the court's rulings leading to the final judgment will be mentioned later in the course of our discussion of the several points argued by defendant for reversal. Initially to be considered, however, is defendant's criticism of the trial court's action in calling upon defendant to make offers of proof with respect to several factual aspects of the case rather than hearing evidence with respect thereto. We find no merit in defendant's argument; it suffered no prejudice from the court's rulings. In the instances in which the court ruled that the proffer would suffice it accepted the proffered facts as having been proven. In those circumstances there was no error in foreclosing defendant from offering testimony to repeat what was already in the record by way of proffer.
Defendant first argues that "the doctrine of federal preemption deprives the court of jurisdiction."
It is to be noted at the outset that defendant does not contend, and could not successfully contend, that the New Jersey courts do not have jurisdiction of the subject matter, that is, "an entire lack of power to hear or determine the case." 20 Am.Jur.2d, Courts, § 87 at 449 (1965). Our courts have the power to enforce rights granted by the constitutional provision that "[p]ersons in private employment shall have the right to organize and bargain collectively." N.J. Const. (1947), Art. I, par. 19. See Cooper v. Nutley *269 Sun Printing Co., Inc., 36 N.J. 189, 195 (1961); Johnson v. Christ Hospital, 84 N.J. Super. 541, 544-545 (Ch. Div. 1964), aff'd 45 N.J. 108 (1965).
We emphasize this because if a court does lack jurisdiction of the subject matter in the strict sense of that term, then jurisdiction cannot be conferred by agreement of the parties or by waiver resulting from a party's failure to interpose a timely objection to the assumption of jurisdiction. State v. Osborn, 32 N.J. 117, 121-122 (1960).
On the other hand, if the court does have jurisdiction of the subject matter but by reason of controlling legislation may be required to yield it in the circumstances of a particular case, the objection to the exercise of such jurisdiction must be raised by one of the parties or by the court. Absent a timely objection, the court may act. Busch & Sons v. Retail Union of N.J., Local 108, 15 N.J. 226, 233 (1954).
We leave aside for the moment the question whether defendant made a timely objection to the court's exercise of its jurisdiction in the case and proceed to a consideration of the merits of defendant's claim. Defendant contends that the court was precluded from exercising its jurisdiction over the dispute because of the provisions of the Labor-Management Relations Act, 1947, 29 U.S.C.A., c. 7.
That Act "pre-empts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the Act." Amalgamated Ass'n of St., E.R. & M.C. Emp. v. Lockridge, 403 U.S. 274, 276, 91 S.Ct. 1909, 1913, 29 L.Ed.2d 473 (1971). If a timely objection is interposed in a labor relations case, a court must yield and not exercise its jurisdiction if the controversy is "arguably" subject to the jurisdiction of the National Labor Relations Board [Board] (San Diego Building Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); Amalgamated Ass'n of St. E.R. & M.C. Emp. v. Lockridge, supra) unless it appears that the Board has declined or would decline to assert jurisdiction.
*270 We agree with defendant that the controversy here  whether plaintiff is entitled to be certified as the sole and exclusive bargaining agent of the employees involved and whether defendant is required to bargain collectively with plaintiff  is within the jurisdiction of the Board. There is no provision in the Labor-Management Relations Act, 1947, exempting the employments here involved from its provisions. Cf. Johnson v. Christ Hospital, supra, 84 N.J. Super. at 545.
Further, we agree that in cases arguably within the jurisdiction of the Board, the question whether the Board would decline to assert jurisdiction is a matter for determination by it, not by a court. Radio & T.V. Broad Tech. v. Broadcast Serv., 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L. Ed 2d 789 (1965); Browning King Co. of N.Y. v. Local 195, 34 N.J. Super. 13, 31-32 (App. Div. 1955).
That determination by the Board may be evidenced in several ways, the most obvious by a showing that the controversy presented to the court had previously been presented to the Board and that it had refused to take jurisdiction. Cf. Cooper v. Nutley Sun Printing Co., Inc., supra, 36 N.J. at 194.
Another method is to show that published jurisdictional standards, duly adopted by the Board, clearly establish that it would not take jurisdiction over the class of cases to which the subject controversy belongs. 48 Am.Jur.2d, Labor and Labor Relations, § 431 at 315 (1970).
A third method, a request to the Board for an advisory opinion, is provided by section 102.98 of the Board's "Rules and Regulations," which read as follows:
Petition for Advisory Opinion; who may file; where to file. (a) Whenever a party to a proceeding before any agency or court of any State or Territory is in doubt whether the Board would assert jurisdiction on the basis of its current jurisdictional standards, he may file a petition with the Board for an advisory opinion on whether it would assert jurisdiction on the basis of its current standards.
(b) Whenever an agency or court of any State or Territory is in doubt whether the Board would assert jurisdiction over the parties *271 in a proceeding pending before such agency or court, the agency or court may file a petition with the Board for an advisory opinion on whether the Board would decline to assert jurisdiction on the basis of its current standards.
Plaintiff did not ask the Board to assume jurisdiction. Nor does the record show that published jurisdictional standards of the Board establish that it would not assert jurisdiction over the controversy here involved.
Nevertheless, it does not follow that we should adopt defendant's suggestion and order the action dismissed, leaving plaintiff to start anew by filing a petition for an election with the Board and then a new action in our courts if the Board declines to assert jurisdiction.
That suggestion might have merit if it appeared that defendant had interposed objection to the court's exercise of jurisdiction at the inception of these proceedings. It did not. On the contrary, initially defendant agreed that it was appropriate for the court to exercise its jurisdiction.
The answering affidavit filed by it on the return day of the order to show cause not only did not deny the allegations of the complaint that "plaintiff is unable to obtain relief from the National Labor Relations Board," but it affirmatively recognized the propriety of the court's exercising jurisdiction. See the language of the last paragraph of defendant's answering affidavit quoted early in this opinion.
Additional evidence of defendant's acknowledgment that the court could exercise its jurisdiction in this case appears in defendant's written proffer of proof dated May 17, 1971.
Again, when defendant applied to this court on May 24 and 28, 1971 for leave to appeal and for a stay of the election provided for in the court's order of May 17, 1971, it did not assert that the court's jurisdiction had been preempted by the federal statute. It did not challenge the right of the court to exercise jurisdiction even though defendant had theretofore on May 14 filed an answer, whose emphasis was on a denial of plaintiff's right to "sole and exclusive status" and an allegation that its members were "engaged *272 in quasi-public employment," but which also included, in addition to a denial of paragraphs 3 to 8 of the first count of the complaint, a "Third Separate Defense"  the cryptic statement, "This court lacks jurisdiction."
Rather, defendant's application for a stay was bottomed on contentions that (1) too early a date had been set for the election and (2) the court, in accordance with the "standard procedure in representation elections," should have determined the appropriate bargaining unit before ordering the election.
That, too, was the gist of the argument presented in the affidavit of defendant's attorney dated May 25, 1971, filed in the Supreme Court in opposition to plaintiff's application to vacate a temporary stay which the Appellate Division had granted. We quote the last paragraph of that affidavit since it clearly evinces an acknowledgment that the court might properly proceed to try the case and enter judgment:
11. There is no emergency so far as the holding of a representation election is concerned. The history of the relationship between the litigants, as set forth in the Affidavits of both parties, demonstrates the contrary. Johnson [Johnson v. Christ Hospital, supra] clearly sets forth the course which this case should take in the Trial Court. The parties should present their testimony. A determination should then be made as to those eligible to vote and the appropriate unit for purposes of the election. Both parties should then be afforded adequate time within which to conduct an orderly program of information.
Nevertheless, on the record here, we would not be justified in ruling that defendant is foreclosed from arguing before us that the judgment cannot stand absent a determination by the Board that it would not assert jurisdiction, since the issue of whether the Board had jurisdiction or would exercise it was decided by the trial court after it was raised in the amendment filed by defendant on July 7, 1971 to the pretrial order entered on July 2, 1971.
The court ruled that there was not sufficient interstate commerce involvement to give the Board jurisdiction. But, *273 as we have ruled, that determination was one to be made by the Board, not by the court.
However, the fact that defendant did initially agree to the exercise of jurisdiction by the court militates strongly against its suggestion that we should dismiss the action since there is still available a means of ascertaining from the Board whether it would assert jurisdiction  this by a petition for an advisory opinion.
The fact that this cause is now at the appellate level affords no reason for not seeking an advisory opinion from the Board. See Cox's Food Center, Inc. v. Retail Clerks U., Loc. No. 1653, 91 Idaho 274, 420 P.2d 645, 655 (1966). The Board's regulations permit the filing of the petition at any stage of a judicial proceeding.
While the court might itself file the petition for an advisory opinion, we deem it more appropriate that the matter be presented to the Board by the parties and, in view of defendant's belated raising of the preemption issue, that the initial petition called for by the Board's regulation, section 102.99, be filed by defendant, with plaintiff thereafter filing a response as provided in section 102.101. Defendant should file such petition within 20 days after the date of filing of this opinion.
If the advisory opinion of the Board concludes that it would assert jurisdiction over the dispute, then the court will enter an order reversing the judgment below. However, if the Board concludes that it would not assert jurisdiction, or if defendant fails to file the petition for an advisory opinion within the 20-day period above provided for, then we shall enter an order affirming the judgment appealed from. We shall do so because we are satisfied that none of the other six points argued by defendant, which we shall discuss, would warrant a reversal of the judgment.
There is no substance to defendant's contention that it was denied a trial on the issues of the right to an election and the size and composition of the appropriate bargaining unit. There was a trial of those issues, with the court considering *274 not only the testimony which defendant offered but also those facts which the court accepted as true after defendant had made a proffer thereof. As we have above ruled, defendant has no cause to complain because the court did not permit it to offer testimony which would be but a repetition of what was already in the record by way of the accepted proffer.
Likewise without merit is the suggestion that the issue as to the size and composition of the bargaining units should have been decided before the election was held. That issue was appropriately left for decision after the election with defendant's rights fully protected by the provisions of the orders of May 13 and May 27, 1971 directing separate tabulations of the votes of the several classes of employees whose right to vote defendant challenged.
The record supports, and there was no error in, the trial court's determination that (1) lay teachers and (2) teachers who were members of a religious order formed distinct and separate identifiable units, so that the votes of the latter group were not to be counted in resolving the question as to who was to represent the lay teachers.
Defendant next contends that "department chairmen, librarians, guidance counselors and non-returning teachers should have been excluded from the bargaining unit." Each group so listed requires separate consideration.
We need not decide whether it was proper to count the vote of lay teachers who were employed on the date of the election but were not to be rehired for the school year 1971-1972 because even if their votes (60 for and 9 against plaintiff) were eliminated, the result of the election would be the same. The only effect would be to reduce plaintiff's plurality from 131 to 80. However, it may be noted that it is generally held that one employed on the eligibility date and on the election date is entitled to vote, even though before the election he has given notice of an intention to quit after the election date or even though the employer has determined, prior to the election date, to discharge him after *275 that date. 48 Am.Jur.2d, Labor and Labor Relations, § 506 at 357-358 (1970).
The record supports, and we find no justification for disturbing, the trial court's finding that guidance counsellors and librarians, who hold teaching certificates and who receive the same salary as lay teachers, are part of the faculty with an identifiable community of interest with lay teachers so as to be appropriately included in the same bargaining unit.
Defendant's challenge to the right to vote of teachers who were also department heads was made for the first time after the election; hence there was no provision in the orders of May 13 and May 27 for a separate tabulation of their votes.
The trial court ruled that the challenge came too late but nevertheless took a proffer of proof and testimony relating to the teachers who acted as department heads, the duties they performed and the powers they could and did exercise. The testimony disclosed, among other things, that those teachers apparently carried a "full teaching load," five periods out of the nine periods in the school day, in addition to exercising supervisory activities. In only one of the 13 schools did the department heads devote more than 30% of their time to "supervisory activities"; in the other 12 they spent at least 70% of their time in their teaching duties.
In those circumstances, and in view of the evidence as to the functions, duties and limited powers of the department heads, we find no error in the court's ruling that the teachers who acted as department heads in those 12 schools could belong to the same bargaining unit as the other lay teachers. The record supports the determination that the department heads were not "supervisors" within the meaning of that term embodied in the cases and statutes holding it inappropriate, in view of the potential conflict of interest, to include persons who are actually "supervisors" as part of the same bargaining unit as those they supervise. Cf. 48 Am.Jur.2d, Labor and Labor Relations, *276 § 454 at 331-332 (1970), and cases cited therein dealing with the applicable provisions of the National Labor Relations Act, 29 U.S.C.A., §§ 152(3) and 164(a); Bd. of Ed., West Orange v. Wilton, 57 N.J. 404 (1971); Bowman v. Hackensack Hospital Ass'n, 116 N.J. Super. 260 (Ch. Div. 1971).
The court's ruling that the department heads who devote more than 30% of their time to supervisory duties are not to be included in the bargaining unit has no impact on the result of the election. All those department heads are in one school and defendant acknowledged that no school has more than eight department heads. A reduction of eight in the number of votes cast for plaintiff would still leave it with a substantial plurality.
We find no merit to defendant's contention that "the election was improper in that sufficient time for an orderly program of education was not allowed," nor in its claim that there should have been separate bargaining units established for each school rather than a single one embracing all the 13 schools. The latter argument chooses to ignore the fact that the parties themselves had recognized the propriety of a single bargaining unit  witness the contract for the prior year covering all the schools as one unit.
Defendant's final contention is that the election should be set aside because of alleged misconduct by plaintiff prior to and at the elections. The court rejected the claim, finding no conduct warranting a setting aside of the election. The court's findings and conclusion are adequately supported by the record.
We retain jurisdiction pending disposition of the proceeding for an advisory opinion which we have ordered.