132 N.J. Super. 554 (1975)
334 A.2d 376
BRIDGETON EDUCATION ASSOCIATION, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
BOARD OF EDUCATION OF THE CITY OF BRIDGETON, COUNTY OF CUMBERLAND, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided February 20, 1975.
*556 Mr. Joel S. Selikoff for plaintiff (Messrs. Hartman, Schlesinger, Schlosser & Faxon, attorneys).
Mr. A. Paul Kienzle, Jr., for defendant.
FRANCIS, J.S.C.
On or about March 4, 1968 the Bridgeton Board of Education (board) adopted and thereafter implemented a policy concerning extra compensation to be paid to teachers of special education (i.e., handicapped classes). This policy provided that those teachers holding permanent certification in the field of special education, issued by the New Jersey State Board of Examiners, would receive extra pay of $400 a year. The reason for this extra compensation was because 18 additional credit hours were required for certification in this field than were required of teachers in normal classes. Also under this policy those teachers possessing provisional certification, i.e., teachers holding more than 6 but less than 18 additional credits, would receive $100 a year extra compensation. On September 1, 1973 the board implemented a policy it had unilaterally adopted on June 12, 1973. This new policy stated that only those teachers who, having already earned the additional 18 credits, held permanent certification to teach the handicapped would continue to receive $400 extra compensation. All other extra compensation for teachers certified in the field of special education were eliminated. This new policy was instituted in response to a change of the qualifications required to teach handicapped children by the New Jersey State Department of Education.
The Bridgeton Education Association (association) instituted a grievance pursuant to the contract entered into between the board and the association. Following the grievance procedure in the contract, the association processed the grievance through four steps. The result at the end of each step was adverse to the association. Instead of taking the grievance to binding arbitration the association filed this suit.
*557 The association alleges that since this policy change involves the subject of teacher compensation, it is a working condition which must be negotiated under N.J.S.A. 34:13A-5.3 before the policy can be established. The board argues that the elimination of the extra compensation is merely a reflection or implementation of a policy decision made by the State Department of Education. They deny that working conditions are affected and assert that a question of policy is at stake for which N.J.S.A. 34:13A-5.3 proscribes the grievance procedure as the proper method for resolving this dispute. The board also claims that since the association has already chosen the grievance procedure it is foreclosed from filing suit due to a theory of estoppel, laches and failure to exhaust their administrative remedies.
The threshold question, therefore, is whether the association is foreclosed from instituting this suit since it had previously elected to file a grievance. It is uniquely a court's function to rule on alleged violations of statutes. The grievance procedure under N.J.S.A. 34:13A-5.3 is designed to enable an employee to "appeal the interpretation, application, or violation of policies, agreements, and administrative decisions". The grievance procedure does not and cannot decide if a statute has been violated. That question is for the court, and the fact that an act may constitute a grievance does not foreclose a court from deciding if the same act also violates a statute. The association has the right to come into court for appropriate relief for violation of the statute in addition to any other avenues of relief that might be open to them. Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962).
Mr. Justice Powell, in Alexander v. Gardner-Denver, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), pointed out that "the distinctively separate nature" of contractual and statutory rights is not destroyed because both rights are violated by the same act. Concedingly Alexander involved a violation of the civil rights statutes, nevertheless, the court did state that "no inconsistency results from permitting both *558 rights to be enforced in their respectively appropriate forums." 415 U.S. at 50, 94 S.Ct. at 1020, 39 L.Ed.2d at 159.
Our Supreme Court, in Englewood Board of Education v. Englewood Teachers' Ass'n, 64 N.J. 1 (1973), clearly defined compensation as a term and condition of employment under N.J.S.A. 34:13A-5.3. There can be no doubt that the instant case involves compensation since teachers will no longer be receiving the extra monies they once were receiving. Therefore, by stopping the payment of this compensation to those teachers who were previously entitled to it without first negotiating with the association, the board has violated N.J.S.A. 34:13A-5.3.
There is much to be said for allowing one to come into court for vindication of a violation of a statutory right. In the instant case this means negotiation before the fact rather than grievance after the fact. Therefore, the parties are ordered to negotiate the issue of extra compensation for special education teachers.
This does not mean that an injured party can turn to a court for relief any time after the statutory violation occurs. Even though laches may not apply one must use reasonable promptness when availing himself of judicial protection. Filing the complaint in July 1974 for a statutory violation by the board that occurred in June 1973 is not reasonable promptness. It is inequitable to allow the association the right to negotiate this issue for the school year 1973-74 after they were dilatory in filing the complaint. The negotiations ordered by this court concerning extra compensation for special education teachers shall be retroactive only for the school year 1974-75.
Order accordingly.