594 A.2d 1348

COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, PLAINTIFF, v. ATLANTIC COUNTY ASSOCIATION FOR RETARDED CITIZENS AND THE STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Chancery Division Atlantic County

Decided May 7, 1991.

Steven P. Weissman for plaintiff.

Evelynn S. Caterson for defendant Atlantic County Association for Retarded Citizens (Martin R. Pachman, attorney).

James T. Hill, Jr. for defendant State of New Jersey (Robert J. Del Tufo, Attorney General of New Jersey, attorney).

GIBSON, J.S.C.

This is a labor dispute arising out of plaintiff-union's efforts to compel a representation election on behalf of the employees of defendant, Atlantic County Association for Retarded Citizens (ARC). ARC challenges the jurisdiction of the court and argues that the issue should be resolved administratively. It also contests plaintiff's assumption that the organizational rights of the affected employees are protected constitutionally. Finally, ARC contends that it lacks sufficient control over wages and working conditions to bargain effectively and that primary control over those areas lies with the State of New Jersey.

Procedurally, this matter is before the court by way of an order to show cause. The State has cross-moved for summary judgment. The following represents this court's factual findings and conclusions of law.

## I.

### *Factual Background.*

Plaintiff, Communications Workers of America, AFL–CIO (CWA) is a labor organization representing workers throughout New Jersey. ARC is a non-profit corporation principally engaged in providing education, rehabilitation and training services for retarded citizens and their families in Atlantic County. In July and August 1990, certain of ARC's employees made known to CWA that they were desirous of joining the union and signed authorization cards designating CWA as their majority representative. CWA responded by filing a petition with the National Labor Relations Board (NLRB) seeking a representational election. ARC resisted the petition claiming that the NLRB lacked jurisdiction and that the State actually controls the salaries, benefits and other working conditions of ARC employees. After three days of hearings, CWA elected to withdraw its petition and instead sought the same relief before the Public Employees Relations Commission (PERC). CWA

subsequently withdrew that petition and filed this action on December 4, 1990.

The relationship between ARC and the State is sharply disputed particularly on the issue of employee control. For present purposes, however, the facts must be viewed in a light most favorable to ARC. *R.* 4:46–2. ARC is a non-profit corporation which provides services to the State through the Department of Human Services, Division of Developmental Disability. Those services implement programs developed in accordance with various legislative directives and, in particular, *N.J.S.A.* 30:1–12. Although not a State agency, ARC is licensed by the State pursuant to *N.J.A.C.* 10:44A–1 *et seq.* and is subject to substantial State control. For example, the overwhelming majority of ARC's funding comes from the State and its ability to generate revenue independently is quite limited. Indeed, with respect to the employee units plaintiff seeks to organize, 100% of the funding comes from the State. The State also sets budget ceilings, must approve all increases and requires that all budgets conform to State guidelines.

Through these same controls, together with its written contract with ARC, the State regulates the wages of ARC employees. The State not only sets wage ceilings, fringe benefits and salaries for substitutes but it also determines minimum staffing requirements and mandates what amounts are to be budgeted for client's food, clothing and leisure activities. Once approved, any budget modification of more than $2,000.00 between line items needs separate State approval. In 1990, for example, ARC sought a cost of living increase for its staff. That request was rejected by the State. In sum, through licensing, state regulations and contractual limitations, the State exercises ultimate control over the essential economic terms of employment for ARC employees.

ARC does retain some control over working conditions. ARC decides who it will hire or fire and handles all employee grievances. It also has the ability to increase wages but only if

it can raise funds through other sources. That has never occurred in any of the employee units involved here. There are certain ARC functions over which the State has no control. For example, the State does not appoint ARC's board of trustees, nor does it select its executive director or have any direct control over day-to-day operations.

## II.

### Legal Conclusions.

### Constitutional Claims.

Normally, jurisdictional issues would be treated at the outset. However, given the purely legal nature of ARC's constitutional challenge, the limitations on agency expertise in this area [1] and the impact that such a challenge has regardless of which forum is ultimately determined to be appropriate, that question will be addressed first.

■ The right of employees to organize is firmly embedded in our Constitution. As stated in, Art. I, par. 19 of the *New Jersey Constitution:*

Persons in private employment shall have the right to organize and bargain collectively. Persons in public employment shall have the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing.

It is clear from this provision and from the various cases interpreting it that the right to organize and bargain collectively is not only constitutional in its dimension but should be accorded the "same stature as other fundamental rights." *Cooper v. Nutley Sun Printing Co. Inc.,* 36 *N.J.* 189, 198, 175 *A.*2d 639 (1961). Nor is there any question regarding this court's authority to enforce those rights. *Ibid.*

---

[1]*Hunterdon Cent. High Sch. v. Hunterdon Cent. High,* 174 *N.J.Super.* 468, 472, 416 *A.*2d 980 (App.Div.1980).

■ ARC does not challenge the constitutional dimension of these rights but rather contends that its employees have "waived" them. Alternatively, ARC claims that its control over wages and working conditions is so limited that it is not the type of employer contemplated by the New Jersey Constitution. Both arguments are rejected. ARC cites nothing in the Constitution or the case law to support the notion that any waiver occurred here. Nor have any facts been set forth which would attribute such an intent to the affected employees. Instead ARC points to certain classifications of employees over whom public agencies such as the NLRB and PERC have determined that they have no jurisdiction.

Clearly some individuals do not qualify as "employees" under relevant state and federal legislation. However, nothing has been presented to convince this court that these employees fall into one of the excluded categories. *See* 29 *U.S.C.A.* § 152(3) and *N.J.S.A.* 34:13A–3(d); *cf. Wayne Tp. v. AFSCME, Council 52*, 220 *N.J.Super.* 340, 345, 532 *A.*2d 255 (App.Div.1987). Nor would such a classification represent a "waiver" even if they did. *Cf. Red Bk. Reg. Ed. Assn. v. Red Bk. Reg. High Sch. Bd. of Ed.*, 78 *N.J.* 122, 140, 393 *A.*2d 267 (1978). In cases where there is some support for a claim of waiver, it will be given effect only where the facts supporting it are clear and unmistakable. *See generally United Steelworkers of America, AFL–CIO v. N.L.R.B.*, 536 *F.*2d 550, 555 (3 Cir.1976). No such showing was made here.

■ ARC's contention that it should not be classified as an "employer" under the New Jersey Constitution must also fail. Nothing in the Constitution or any of the case law interpreting it supports such a position. Even where such questions are legitimately raised under the state and federal regulatory acts, 29 *U.S.C.A.* § 141 et seq. and *N.J.S.A.* 34:13A–1 et seq., the limitations they contain do not abrogate the fundamental right that these employees enjoy under our State Constitution. In sum, ARC's employees are entitled to the constitutional rights

set forth in Article I. No waiver of those rights occurred when these employees chose to work for ARC. Nor does ARC's limited control over wages and working conditions excuse it from honoring the constitutional rights that its employees would otherwise enjoy.

## III.

### Jurisdictional Issues.

A. *National Labor Relations Board.*

As indicated earlier, ARC questions this court's jurisdiction to decide any of the questions raised by plaintiff's demands. Essentially, it argues that any entitlement to a representation election must be decided by one of the regulatory agencies having statutory authority over labor disputes. *See* 29 *U.S.C.A.* § 7; *N.J.S.A.* 34:13A–5.4. On the other hand, because of ARC's contention that it should not be deemed the "employer" for these purposes, it also claims that the NLRB lacks jurisdiction.

In analyzing this issue, it is important to focus first upon the nature of the jurisdictional challenge. For example, whatever merit there may be to ARC's position, it cannot be fairly contended that this court does not have the power to enforce constitutional rights, including the right to bargain collectively. *N.J. Const.* (1947), Art. I, par. 19; *Lay Fac. Assoc. v. Newark Archdiocese*, 122 *N.J.Super.* 260, 268, 300 *A.*2d 173 (App.Div. 1973). The fact that the court has jurisdiction over the subject matter, however, does not end the inquiry. As a result of controlling legislation or for reasons of comity, this court may have to yield jurisdiction under the circumstances of a particular case. Thus, under the Labor Management Relations Act (LMRA), state as well as federal courts are prohibited from regulating conduct arguably protected or prohibited by that act. 29 *U.S.C.A.* § 7; *Lay Fac. Assoc. v. Newark Archdiocese*, *supra* at 269, 300 *A.*2d 173; *Motor Coach Employees v. Lockridge*, 403 *U.S.* 274, 276, 91 *S.Ct.* 1909, 1913, 29 *L.Ed.*2d 473,

477 (1971). Indeed, in face of a timely objection, the court must yield its jurisdiction even when the controversy is "arguably" subject to the jurisdiction of the NLRB.[2] *Lay Fac. Assoc. v. Newark Archdiocese, supra* at 269, 300 *A.*2d 173.

There is an exception to the above rule where it appears that the NLRB has or would decline jurisdiction. *Ibid.* While that is usually a matter to be determined by the NLRB, not by the court, *Id.* at 270, 300 *A.*2d 173; *Radio & T.V. Local 1264 v. Broadcast Serv.,* 380 *U.S.* 255, 256, 85 *S.Ct.* 876, 877, 13 *L.Ed.*2d 789, 790 (1965), that is not always true. In this case, the same relief which plaintiff now requests was already submitted to the NLRB. Since the petition was withdrawn before a decision was rendered, this cannot fairly be labeled as a case where the board has declined jurisdiction "in the same case." On the other hand, the board has considered identical applications involving ARCs from other counties in New Jersey and in each instance, declined jurisdiction. In those cases, the board decided that ARC's control was so limited that in reality, it was the State which retained ultimate discretion to set wage and benefit levels.[3] Since the State and its agencies are exempt under the National Labor Relations Act (NLRA), the board concluded that it should decline jurisdiction. *Res–Care, Inc.,* 280 *N.L.R.B.* 670, 122 *LRRM* 1265 (1986); *Long Stretch Youth Home,* 280 *N.L.R.B.* 678, 122 *LRRM* 1272 (1986).

Despite these decisions, the ability of this court to predict what the NLRB would do is not without question. In cases involving similar but not the same controls, the board concluded that the state agency did not exercise the kind of control that

---

[2]Although in this case, neither ARC nor any other party, actually seeks to invoke the jurisdiction of the NLRB, the issue nevertheless needs to be addressed.

[3]*Association for Retarded Citizens, Union County, Inc. v. Communication Workers of America, AFL–CIO,* Case No. 22–RC–10365 and *Association for Retarded Citizens, Hudson County Unit, Inc. v. District 1199J, National Union of Hospital and Health Care Employees, AFL–CIO,* Case No. 22–RC–9614.

would preclude an employer from engaging in meaningful collective bargaining. *See, e.g., N.L.R.B. v. Austin Developmental Ctr., Inc.,* 606 *F*.2d 785 (7 Cir.1979); *N.L.R.B. v. St. Louis Comp. Neighborhood Health,* 633 *F*.2d 1268 (8 Cir.1980); *N.L.R.B. v. Parents & Friends of Sp. Living Center,* 879 *F*.2d 1442 (7 Cir.1989).

What is clear from the federal cases and the NLRB decisions is that the evaluation of a state's role is highly fact sensitive and the degree of control over wages and other economic items is critical. All cases recognize the general proposition that where a private employer, because of a contract with an exempt entity, retains so little control over its own labor relations that it can not engage in meaningful collective bargaining, § 2(2) of the LMRA deprives the board of jurisdiction and the state agency is deemed to be the true employer. 29 *U.S.C.A.* § 152(2); *see, e.g., N.L.R.B. v. Austin Developmental Ctr., Inc., supra* at 789; *N.L.R.B. v. Highview, Inc.,* 590 *F*.2d 174, 177 (5 Cir.1979), mod. on other grounds 595 *F*.2d 339 (5 Cir.1979); *Res Care Inc., supra.*

When these principles are applied to the facts assumed to be true here, and in particular, given the rulings in the Hudson and Union county cases, it seems clear that the NLRB would decline jurisdiction. Accordingly, although the present claim is arguably within the jurisdiction of the NLRB, given the above experience and given the fact that none of the parties seeks to invoke the NLRB, to return this question there for the third time would be a waste of energy for all the participants and an unnecessary delay in effectuating the constitutional rights of these employees. *Lay Fac. Assoc. v. Newark Archdiocese, supra* 122 *N.J.Super.* at 270, 300 *A*.2d 173.

B. *Public Employees Relations Commission.*

Having decided that the NLRB would decline jurisdiction, the question remains as to whether plaintiff's claim should be decided by PERC. *N.J.S.A.* 34:13A–5.4. Plaintiff contends

that the issue should be decided here and argues that a transfer to PERC would be just as wasteful as a transfer to the NLRB, particularly given the lack of clarity as to whether these are public employees. On the other hand, plaintiff continues to maintain that the State must participate in the negotiating process because of its substantial control over wages and working conditions. The State, of course, argues that ARC's employees are not "public" employees and that this court should so rule as a matter of law. ARC claims that fact questions preclude summary judgment and that "employer status" must be resolved before it can be determined whether plaintiff is entitled to any relief.

The Employer–Employee Relations Act requires PERC to "make policy and establish rules and regulations concerning employer-employee relations in public employment...." *N.J.S.A.* 34:13A–5.2. PERC's powers specifically include the settlement of disputes, the enforcement of statutory provisions concerning representation elections and "related matters." *Ibid.* Given the liberal interpretation accorded to the act, the above mandate is broad enough to include the determination of whether particular employees should be considered "public" and, if so, whether they are entitled to a representation election. *See generally Bergen Cty. Freeholder Bd. v. Bergen Cty. Pros'r.*, 172 *N.J.Super.* 363, 369, 412 *A.*2d 130 (App.Div. 1980).

It may nevertheless be argued that unless it is first determined that the dispute arises within the area of "public employment," PERC should not assume jurisdiction. If true, who should make that determination as an initial matter? One answer, of course, is the Superior Court. *Bridgeton Ed. Assoc. v. Bd. of Ed. Bridgeton*, 132 *N.J.Super.* 554, 557, 334 *A.*2d 376 (Ch.Div.1975). Given the court's role in enforcing constitutional rights, it follows that it would also have the ability to determine whether those rights arise from employment which is public as opposed to private. *N.J. Const.* (1947), Art. I, par. 19. Even assuming this power exists, however, that does not mean that the court *should* exercise it. *City of Hackensack v. Winner,*

82 *N.J.* 1, 32, 410 *A.*2d 1146 (1980); *Lay Fac. Assoc. v. Newark Archdiocese, supra* 122 *N.J.Super.* at 269, 300 *A.*2d 173.

In assessing whether the court should defer jurisdiction, it is helpful to examine the nature of the dispute and the expertise, if any, that such an inquiry includes. *Matter of Judges of Passaic County,* 100 *N.J.* 352, 365, 495 *A.*2d 848 (1985). In this case it is clear that the determinations needed to assess the impact of the State's role regarding these employees are fact sensitive and labor related. Their resolution can best be achieved in a forum with the most experience and expertise regarding that subject matter. *Ibid.; Atlantic City v. Local 198,* 234 *N.J.Super.* 596, 603, 561 *A.*2d 307 (Ch.Div.1989). It is also important to recognize that the present dispute implicates questions that go beyond factual determinations. For example, a determination must be made regarding the appropriate bargaining unit.[4] It is also necessary to determine the degree to which each of the entities must participate in the bargaining process, once the results of the election are known. This last question presents the most challenging determination.

PERC has long been recognized as the state agency which brings the most speed and expertise to the subject of labor disputes. *Bernards Tp. Ed. Bd. v. Bernards Tp. Ed. Ass'n,* 79 *N.J.* 311, 316, 399 *A.*2d 620 (1979). With respect to certain types of labor disputes, such as the scope of negotiations and unfair labor disputes, its jurisdiction is said to be "primary." *Ridgefield Park Ed. Assn. v. Ridgefield Park Bd. of Ed.,* 78 *N.J.* 144, 154–155, 393 *A.*2d 278 (1978). PERC's "primary" jurisdiction also extends to controversies involving asserted conflicts between the Employer–Employee Relations Act and other statutory schemes, *Bernards Tp. Ed. Bd. v.*

---

[4]During the hearing before the NLRB, ARC and the union entered into a stipulation that the bargaining unit would consist of 65 full- and part-time residential aides and techniques in group homes and training. However, given the withdrawal of the NLRB petition, it is assumed that this is now an open question.

*Bernards Tp. Ed. Ass'n, supra* 79 *N.J.* at 317, 399 *A.*2d 620, and with regard to representation elections, PERC is said to be "uniquely qualified." *Matter of Judges of Passaic County, supra* 100 *N.J.* at 361, 495 *A.*2d 848. Although it is sometimes necessary to invoke the jurisdiction of both PERC and the Superior Court, the court's role is normally confined to contract interpretation and other purely legal matters.[5] *Atlantic City Local 198, supra* 234 *N.J.Super.* at 603, 561 *A.*2d 307.

If it is ultimately determined that the State exercises sufficient control over wages and working conditions to be classified as an "employer" under *N.J.S.A.* 34:13A–3(c) and the State refuses to negotiate with a majority representative, such a position could be characterized as an unfair labor practice. *See N.J.S.A.* 34:13A–5.4(a)(5). If so, PERC's power to prevent such an act is exclusive. *N.J.S.A.* 34:13A–5.4(c). The State does not deny that these employees are entitled to a representative election but because of its position that they are not public employees, it has thus far refused to participate in any election. Consequently, it also maintains that it has no obligation to bargain. Once again, these differences can best be resolved by PERC.

In sum, because of the expertise it brings to this subject and the deference with which it is normally accorded, PERC represents the best forum for the resolution of the within dispute. *See Matter of Judges of Passaic County, supra* 100 *N.J.* at 365, 495 *A.*2d 848.

## C. *Joint-employers.*

The final jurisdictional issue is posed by the arguably private aspects of this matter. In other words, even if PERC does conclude that the State qualifies as an "employer" and must

---

[5]This is not to suggest that the Superior Court is not a logical forum for subjects over which PERC lacks effective control such as injunctive actions regarding strikes. *See Asbury Pk. Ed. Bd. v. Asbury Pk. Ed. Assn.,* 145 *N.J.Super.* 495, 511, 368 *A.*2d 396 (Ch.Div.1976).

bargain, does the same obligation lie with ARC? Admittedly, some of the working conditions of these employees are controlled by ARC. However limited these areas may be, it would seem that ARC would have the obligation to bargain as to those. Given the overlapping control of ARC and the State, it may be that they should be viewed as "joint-employers" and hence, both subject to honor the organizational rights of these employees.[6]

The concept of joint employers, although not the norm, has been part of the legal landscape for some time. It was recently reaffirmed in a federal court decision interpreting the NLRA. *Carrier Corp. v. N.L.R.B.*, 768 *F*.2d 778, 781 (6 Cir. 1985). As held there, when two or more employers exert significant control over the same employees, that is, where they share in the determination of matters governing essential terms and conditions of employment, they are considered "joint employers" within the meaning of the NLRB. *Ibid.; N.L.R.B. v. Browning–Ferris Industries, etc.*, 691 *F*.2d 1117, 1124 (3 Cir. 1982). The same concept has been applied within the context of the Fair Labor Standards Act, 29 *U.S.C.A.* § 203(d); *Maldonado v. Lucca*, 629 *F.Supp.* 483, 487 (D.N.J.1986); *See* Note, "Joint Employer," 18 *Rutgers L.J.* 863 (1987). Whether that kind of joint control is actually being exercised is usually a factual question. *Boire v. Greyhound Corp.*, 376 *U.S.* 473, 481, 84 *S.Ct.* 894, 898, 11 *L.Ed.*2d 849, 855 (1964); *see generally* Annotation, "Labor Law–Joint Employers," 73 *A.L.R.Fed.* 609 (1985).

No reported decision appears to have addressed this issue within the framework of the Employer–Employee Relations Act but the concept of "joint employers" has been applied in a number of workers' compensation cases. *Conway v.*

---

[6] Of course, PERC may decide that the State is not an employer within *N.J.S.A.* 34:13A–3(c) and may simply decline jurisdiction in which event it may be necessary for this matter to return to this court.

*Mister Softee, Inc.,* 93 *N.J.Super.* 286, 290, 225 *A.*2d 707 (App.Div.1967), aff'd 51 *N.J.* 254, 239 *A.*2d 241 (1968); *Damanoski v. Borough of Fanwood,* 237 *N.J.Super.* 452, 456, 568 *A.*2d 123 (App.Div.1989). Where there is a unity of control and authority in the two employments with a corresponding intermingling of the employee's duties, an employee can serve two employers at the same time. *Damanoski v. Borough of Fanwood, supra* at 456, 568 *A.*2d 123. This same logic applies here. If one assumes the degree of control described earlier, meaningful negotiations cannot occur without the participation of both the State and ARC. Whether the facts and circumstances as ultimately determined justify that conclusion, will be decided by PERC.

Although it has been said that only two classes of employment exist under the New Jersey Constitution, public and private, *I.B.T., Local No. 863 v. Seaboard Farms,* 214 *N.J.Super.* 425, 427, 519 *A.*2d 920 (App.Div.1986), subject to certain exceptions which do not apply here, there is nothing to prohibit someone from simultaneously working for employers from both the public and private sector. If that is what PERC determines to have happened, then logic would suggest that both employers must cooperate in the bargaining process.[7] *Carrier Corp. v. N.L.R.B., supra.*

## IV.

### Motion For Summary Judgment.

The State seeks to be dismissed as a party as a matter of law. In one sense its application is moot, given this court's determination to refer the matter to PERC. Since this case will now be dismissed, the State will no longer be a party to "this action."

---

[7] A determination that ARC and the State are co-employers for collective bargaining purposes does not compel the conclusion that they are co-employers for all purposes. Such a determination can only be made in a setting in which the issue is properly framed.

It should be clear from the earlier findings, however, that even if this court were to retain jurisdiction, the motion would have to be denied. Recognition of that fact is important for two reasons. For one, it further supports the conclusion that the issues confronting the court are not "purely legal." *Atlantic City v. Local 198, supra.* Secondly, it underscores the decision that plaintiff's request for summary relief must also be denied. *R.* 4:67–1.

The competing certifications demonstrate that many fact questions remain to be resolved. For example, the State maintains that ARC is an independent contractor and that its only connection with the State is by way of contract. ARC, on the other hand, contends that the State actually controls wages and working conditions through a variety of devices. Those devices include not only the contract with the Department of Human Services, but the department's reimbursement manual, regulations regarding staff client ratios and the licensing requirements effecting programs and facilities for the developmentally disabled. ARC points out that the State not only sets wage ceilings but it also limits overtime, determines what monies will be available for promotions and regulates the amount of staff leave time. Although ARC pays the salaries, that is not dispositive of who the employer is. *Bergen Cty. Freeholder Bd. v. Bergen Cty. Pros'r., supra* 172 *N.J.Super.* at 369, 412 *A.*2d 130. Similar factual disputes exist regarding personnel matters, work schedules and employment conditions. Some of these disputes may involve combined questions of law and fact, but the point is that they cannot be resolved in a motion for summary judgment.

## V.

### Conclusion.

The right of ARC's employees to have a representation election is guaranteed by Article I, paragraph 19 of the New Jersey Constitution. No evidence has been presented to sug-

gest that those rights have been waived. Left open by that conclusion is whether, for collective bargaining purposes, their "employer" includes the agency which allegedly controls most of the economic conditions over which the potential for bargaining exists. To resolve that question, one must first address the issue of where that determination should be made. Since the NLRB has declined to act in almost identical cases, there is no federal impediment to this court's jurisdiction. On the other hand, given the substantial control exercised by the State over the employees involved and the expertise which PERC brings to labor disputes involving public agencies, this matter can be best resolved there.

Accordingly, this matter will be transferred to the Public Employment Relations Commission for fact finding and determinations regarding the issues related above. The court will retain jurisdiction to the extent necessary to implement whatever rulings are made by PERC. The State's motion for summary judgment is denied.