PUBLIC SAFETY EMPLOYEES ASSOCIATION, a public employees association; Robert Lewis Brantley, Ronald Cole, Richard Dykema, Ray Gary, Warren Grant, Donald Kitchenmaster, Keith Perrin and Carl Swanson, on behalf of themselves and all other public safety officers employed by the State of Alaska who presently inhabit, or since July 1, 1979 inhabited, or may inhabit, State owned or controlled housing, Appellants,

v.

The STATE of Alaska, Jay Hammond, Governor of the State of Alaska; The Department of Administration, a State agency; William R. Hudson, Commissioner of the Department of Administration; George Elgee, Director of the Division of General Services and Supply, a State agency; A.M. Saylors, Deputy Director of the Division of General Services and Supply, a State agency; Michael Deberry, Coordinator, Employee Housing Program, a State agency, Appellees.

No. 6053.

Supreme Court of Alaska.

Jan. 28, 1983.

William K. Jermain, Jermain, Dunnagan & Owens, Anchorage, for appellants.

Arthur H. Peterson, Asst. Atty. Gen., Wilson L. Condon, Atty. Gen., Juneau, for appellees.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

Appellants are the Public Safety Employees Association, a union of state troopers and fish and wildlife protection officers, and several individual union members who reside in bush housing owned by the state. Appellees are the state, which is the employer of the individual appellants, and officials involved in the administration of the bush housing program for state employees. PSEA and the state are parties to a collective bargaining agreement containing mandatory grievance-arbitration provisions.[1]

---

1. The grievance-arbitration provisions of the 1978–79 PSEA-State contract provide in part:

In July of 1979, the State Department of Administration took control of the state's bush housing and reassessed rents in accordance with its housing regulations. Many PSEA members were faced with substantial rent increases as a result. Because of allegedly poor conditions in the rental units,[2] fifteen members refused to pay the increase, and four stopped paying rent altogether.

The rent withholding dispute continued unresolved after the 1978–79 PSEA-State collective bargaining agreement expired. During negotiations for a new contract, the parties could not reach agreement on the issue of bush housing. This issue, along with others not relevant here, was submitted to interest arbitration in May 1980.[3]

Before the arbitrator, PSEA argued that its members "should not be required to pay rent until the housing [was] brought up to reasonable standards and an adequate maintenance program ... initiated." The arbitrator rejected PSEA's argument and adhered instead to the state's position by incorporating the Department of Administration's housing regulations, which had been the basis for the rent reassessments, into the 1980–81 collective bargaining agreement.

Subsequently, the Department of Administration notified all employees who had withheld rent that, beginning September 1, 1980, 10% of their salaries would be deducted until past amounts due were fully paid. On September 18, PSEA filed the present suit, alleging that (1) the "occupancy factor"[4] for determining rental amounts under the incorporated state regulations violated the equal protection clause of the Alaska Constitution[5] and state statutory protec-

---

For the purposes of this Agreement, a grievance is defined as a dispute arising out of the meaning or interpretation of a particular clause of this Agreement ... or an alleged violation of such Agreement.... The Employer, the Association (or its designee) and the aggrieved member or members, as the case may be, shall use the following procedure as the sole means of settling said grievance.

. . . .

Violations of a specific term or terms of this Agreement ..., [and] disputes arising out of a term or terms of this Agreement ... shall be subject to binding arbitration.

. . . .

A grievance which involves the meaning or application of the express terms of the Agreement ... may be submitted by the Association or the Employer to arbitration.

. . . .

The decision of [the] arbitrator shall be final and binding upon all parties. The arbitrator shall not be empowered to rule contrary to, to amend, or add to, or to eliminate any of the provisions of this Agreement.

. . . .

It is agreed that the above Arbitration Procedure shall be the sole method of settling disputes, differences or controversies referred to arbitration. It is further agreed that the parties covered hereunder shall be bound by any decisions, determinations, agreements or settlements which may be effectuated pursuant to invoking the Arbitration procedure. The grievance-arbitration provisions of the 1980–81 PSEA-State contract do not appear in the record. The parties suggest, and we will assume, that the 1978–79 provisions are identical to those in effect during the time relevant to this appeal.

2. Affidavits and letters from PSEA members include allegations of faulty wiring, poor insulation, leaky roofs, persistent indoor frost build-up, dangerous or inadequate heating systems, persistent and unpleasant indoor odors and fumes, frequent freezing of pipes, poorly functioning windows and doors, and unattended fire dangers.

3. Interest arbitration, unlike rights arbitration, involves the formulation of contract terms. F. & E. Elkouri, How Arbitration Works 47 (3d ed. 1973).

4. Under the state's housing regulations, rents are calculated according to a "rental formula" which includes adjustments for a variety of factors, including geographical location, the condition of the unit, and the degree to which certain amenities may be lacking. The "occupancy factor" is an adjustment based on the number of people residing in the unit.

According to state officials, the factor is designed to reduce the rent for occupants who are "under-utilizing" their facilities. PSEA argues, however, that the provision discriminates against employees with families.

5. Alaska Const. art. I, § 1 provides:

*Inherent Rights.* This constitution is dedicated to the principles that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportuni-

tions against discrimination in housing,[6] (2) the 10% deduction violated constitutional and statutory provisions governing the garnishment of wages,[7] and (3) various actions by the state violated provisions of the Uniform Residential Landlord and Tenant Act (URLTA).[8]

The trial court dismissed the case on April 23, 1981, on the ground that the exclusive remedy for PSEA's claims lay in the grievance-arbitration procedure of the collective bargaining agreement. PSEA now appeals this decision. We reverse, holding that there is no remedy under the contract for the claims, except as to certain of those which arise under URLTA. As to the latter, we hold that the right to a judicial remedy afforded by URLTA cannot be prospectively contracted away.

ties, and protection under the law; and that all persons have corresponding obligations to the people and to the State.

**6.** The statutes provide:

AS 18.80.200 *Purpose.* (a) It is determined and declared as a matter of legislative finding that discrimination against an inhabitant of the state because of race, religion, color, national origin, age, sex, marital status, changes in marital status, pregnancy or parenthood is a matter of public concern and that such discrimination not only threatens the rights and privileges of the inhabitants of the state but also menaces the institutions of the state and threatens peace, order, health, safety and general welfare of the state and its inhabitants.

(b) Therefore, it is the policy of the state and the purpose of AS 18.80.010–18.80.300 to eliminate and prevent discrimination in employment, in credit and financing practices, in places of public accommodation, in the sale, lease, or rental of real property because of race, religion, color, national origin, sex, age, marital status, changes in marital status, pregnancy or parenthood. It is not the purpose of AS 18.80.010–18.80.300 to supersede laws pertaining to child labor, the age of majority or other age restrictions or requirements.

AS 18.80.240. *Unlawful practises in the sale or rental of real property.* It is unlawful for the owner, lessee, manager or other person having the right to sell, lease or rent real property

. . . .

## II

■ Under the collective bargaining agreement all that can be arbitrated, apart from individual disciplinary actions, are disputes involving "the meaning or application of the express terms of the Agreement." The contract also provides:

The arbitrator shall not be empowered to rule contrary to, to amend, or add to, or to eliminate any of the provisions of this Agreement.

These provisions are in accord with section 200(e) of the Public Employment Relations Act, AS 23.40.070–.260, allowing arbitration of "a dispute arising from interpretation or application of a collective bargaining agreement."

Thus, as to each claim presented in this case we must determine whether it involves a dispute as to the meaning or application

(2) to discriminate against a person because of sex, marital status, changes in marital status, pregnancy, race, religion, color or national origin in a term, condition or privilege relating to the use, sale, lease or rental of real property; however, nothing in this paragraph prohibits the sale, lease or rental of classes of real property commonly known as housing for "singles" or "married couples" only; . . .

**7.** The provisions allegedly violated are AS 09.-40.040 and Alaska Const. art. I, § 7. AS 09.-40.040 provides:

*Third Party Liability.* All persons having in their possession personal property belonging to the defendant or owing a debt to the defendant at the time of service upon them of the writ and notice shall deliver, transfer, or pay the property or debts to the peace officer, or be liable to the plaintiff for the amount of the property or debts until the attachment is discharged or a judgment recovered by plaintiff is satisfied. Debts and other personal property may be delivered, transferred, or paid to the peace officer without suit, and the receipt of the officer is a sufficient discharge.

Alaska Const. art. I, § 7 provides:

*Due Process.* No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.

**8.** AS 34.03. *See* notes 11–14 *infra* for the specific provisions allegedly violated.

of the collective bargaining agreement. If such a dispute is involved, or if it is reasonably arguable that such a dispute is involved,[9] then the claim would be arbitrable. The question in such case then becomes whether arbitration is the exclusive remedy. If, on the other hand, a dispute as to the meaning or application of the agreement is not involved, the claim is not arbitrable at all. If there is no arbitration remedy, no question as to whether arbitration is the exclusive remedy arises.

The first count of PSEA's complaint charges that the occupancy factor of the rental formula discriminates against PSEA members on the basis of marital status and number of family members denying them equal rights in violation of article I, section 1 of the Alaska Constitution and in violation of AS 18.80.200 and AS 18.80.240.[10] This claim does not call into question the meaning of a contract term or whether the contract has been correctly applied. Instead, the claim challenges the legality of a clearly expressed and plainly applicable contract formula. If the arbitrator were to uphold PSEA's claim the effect would be to strike the formula from the agreement. Such an action would clearly be beyond the powers that the Agreement grants to an arbitrator. We hold, therefore, that under the terms of the arbitration clause, this claim was not arbitrable and must be decided judicially.

The 10% payroll offset for past due rent is attacked as an illegal garnishment of wages, primarily on due process grounds.

No term of the agreement authorizes this deduction. The state argues that this claim is arbitrable because the arbitrator would be authorized to rule that the offset is an unreasonable implementation of the agreement. We do not believe that this is a reasonably arguable position, for the offset is not an implementation of the agreement in any respect.

The arbitration clause only applies to questions which involve "the meaning or application of the express terms of the Agreement." We have been referred to no terms of the agreement that arguably bear on the right of offset. Moreover, no argument is made that the collective bargaining agreement impliedly restricts the right of the state to exercise an offset, and, since the agreement does not touch on the subject, we do not believe that such an argument could reasonably be offered. For these reasons we conclude that the claim concerning the legality of the offset for past due rent is not amenable to arbitration.

█ The third count of the complaint alleges that the state violated provisions of URLTA. Particularly, PSEA alleges that the failure of the state to adequately maintain the dwellings violated the landlord's obligations to maintain fit premises under AS 34.03.100;[11] that the state had unlawfully entered rented premises for the purpose of harassment of tenants in violation of AS 34.03.140(c);[12] that the state had been guilty of a retaliatory rent increase in violation of AS 34.03.310;[13] and that the

---

**9.** *See International Brotherhood of Teamsters, Local 959 v. King,* 572 P.2d 1168, 1172 (Alaska 1977).

**10.** *See* notes 5 & 6 *supra.*

**11.** AS 34.03.100(a)(1) provides:
  The landlord shall (1) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition; . . .

**12.** AS 34.03.140(c) provides:
  No landlord may abuse the right of access or use it to harass the tenant. Except in case of emergency or if it is impracticable to do so, the landlord shall give the tenant at least 24 hours notice of his intent to enter and may

enter only at reasonable times and with the tenant's consent.

**13.** AS 34.03.310 provides in pertinent part:
  (a) except as provided in (c) and (d) of this section, a landlord may not retaliate by increasing rent . . . after the tenant has
  (1) complained to the landlord of a violation of § 100 of this chapter; [detailing landlord's duties to maintain fit premises]
  (2) endeavored to avail himself of rights and remedies granted him under the provisions of this chapter;
  (3) organized or become a member of a tenant's union or similar organization; or
  (4) complained to a governmental agency responsible for enforcement of governmental housing, wage, price or rent controls.

refusal of the state to allow tenants to deduct the cost of repairs amounted to a forced waiver of the statutory right to repair and deduct in violation of AS 34.03.-040(a)(1).[14]

We believe that the duty to maintain fit premises claim is one for which a contract remedy is available and is thus arbitrable. Article XIII of the agreement imposes a repair duty on the state and requires that repairs be expeditiously performed. The harassment claim may also be arbitrable, for the agreement requires the state "to implement a program of regular housing inspections." It can be argued that irregular and unannounced inspections are an improper implementation of this obligation.

■ However, the retaliatory rent claim is not remediable under the agreement. It does not involve a dispute concerning the meaning of any terms of the agreement, or whether the agreement has been properly implemented. The rent to be charged is clearly formulated and no claim is made that the formula has been misapplied. Similarly, the waiver of the right to repair and deduct claim does not appear to be arbitrable. The agreement provides that the cost of essential repairs made by the employees on an emergency basis "shall be billed to the Employer," language which plainly precludes the option of rent deduction. No question is raised concerning the implementation of this language.

■ We conclude therefore that the retaliatory rent and waiver of rights claims should not have been dismissed because they are not arbitrable. The duty to maintain fit premises and the harassment claims were arbitrable. As to them the question is whether the existence of the arbitration remedy precludes the exercise of the statutory remedy.

We have but little difficulty in answering this question in the negative. The legislature, in enacting URLTA, has granted to each tenant in the state the right to sue his landlord for violations specified in the act. Injunctive relief is available[15] and the act is replete with liquidated and special damage provisions,[16] remedies which the arbitrator under the parties' agreement in this case would be powerless to provide.[17] The act contains an explicit non-waiver provision applicable to all "rights or *remedies....*"[18] (Emphasis added). It follows that the right

---

**14.** AS 34.03.040(a)(1) provides:
(a) No rental agreement may provide that the tenant or landlord
(1) agrees to waive or to forego rights or remedies under 34.03.010–34.03.380; ...
AS 34.03.180(a)(1) provides:
(a) If, contrary to the rental agreement of § 100 of this chapter, the landlord deliberately or negligently fails to supply running water, hot water, heat, sanitary facilities or other essential services, the tenant may give written notice to the landlord specifying the breach and may immediately
(1) procure reasonable amounts of hot water, running water, heat, sanitary facilities and essential services during the period of the landlord's noncompliance and deduct their actual and reasonable cost from the rent; ...

**15.** AS 34.03.160(b) and .300(b).

**16.** AS 34.03.210, .230, .260(d), .290, .300(a) and (b).

**17.** The fact that an arbitrator cannot grant the relief afforded by a statute is an indication that holding arbitration to provide an exclusive remedy would conflict with the statutory purpose.

*Barrentine v. Arkansas-Best Freight System,* 450 U.S. 728, 745, 101 S.Ct. 1437, 1447, 67 L.Ed.2d 641, 656–57 (1981); *Marshall v. N.L. Industries, Inc.,* 618 F.2d 1220, 1223 (7th Cir. 1980).

**18.** AS 34.03.040(a) provides:
No rental agreement may provide that the tenant or landlord (1) agrees to waive or to forego rights or remedies under AS 34.03.-010–34.03.380; ...
Part (b) of the same section provides in part:
(b) A provision prohibited by (a) ... of this section included in a rental agreement is unenforceable. If a landlord or tenant wilfully uses a rental agreement containing provisions known by him to be prohibited, the other party may recover the amount of his actual damages.
The collective bargaining agreement in this case is a rental agreement as that term is used under the act. AS 34.03.360(13) defines the term "rental agreement" to mean "all agreements, written or oral, ... embodying the terms and conditions concerning the use and occupancy of a dwelling unit and premises; ..."

to sue under the act cannot be prospectively bargained away. Hence, the contract remedy here cannot displace that which is provided by the act.

In circumstances involving coincident arbitral and statutory avenues of relief, federal courts have frequently held that arbitration does not afford an exclusive remedy. *See Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 745, 101 S.Ct. 1437, 1447, 67 L.Ed.2d 641, 644, 656–57 (1981) (Fair Labor Standards Act:

> In sum, the FLSA rights petitioners seek to assert in this action are independent of the collective bargaining process. They devolve on petitioners as individual workers, not as members of a collective organization. They are not waivable. Because Congress intended to give individual employees the right to bring their minimum wage claims under the FLSA in court, and because these congressionally granted FLSA rights are best protected in a judicial rather than in an arbitral forum, we hold that petitioners' claim is not barred by the prior submission of their grievances to the contractual dispute-resolution procedures.);

*Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 50, 94 S.Ct. 1011, 1020, 39 L.Ed.2d 147, 159 (1974) (Civil Rights Act: "The distinctively separate nature of ... contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence."); *Air Line Pilots Association International v. Northwest Airlines, Inc.,* 627 F.2d 272, 277–78 (D.C.Cir.1980) (Employees Retirement and Income Security Act); *Marshall v. N.L. Industries, Inc.,* 618 F.2d 1220, 1222–23 (7th Cir.1980) (Occupational Safety and Health Act); *Horne v. New England Patriots Football Club, Inc.,* 489 F.Supp. 465, 470 (D.Mass.1980) (*semble*); *Johnson v. Ameri-* *can Airlines, Inc.,* 487 F.Supp. 1343, 1344–46 (N.D.Tex.1980) (Age Discrimination in Employment Act).[19] Several state courts have similarly refused to require arbitration when statutory rights are at issue. *Moss-American, Inc. v. Fair Employment Practices Commission,* 22 Ill.App.3d 248, 317 N.E.2d 343, 349 (1974) (arbitrator's decision in the area of discrimination does not foreclose authority of the Illinois Fair Employment Practices Commission); *School Committee of Hanover v. Curry,* 3 Mass.App. 151, 325 N.E.2d 282, 285 (arbitrator's decision "does not preclude further judicial review where statutory policies have been affected."), *aff'd,* 369 Mass. 683, 343 N.E.2d 144 (1975); *Mountain States Telephone & Telegraph Co. v. Commissioner of Labor,* 608 P.2d 1047, 1061 (Mont.) (State Maternity Leave Act creates "uniquely personal" rights that are not proper subjects for arbitration), *appeal dismissed,* 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980); *Vaughn v. Pacific Northwest Bell Telephone Co.,* 40 Or.App. 427, 595 P.2d 829, 833 (1979) (claims under unlawful employment practices statute need not first be arbitrated "because plaintiff is not seeking a remedy for breach of the employment contract. Rather, she seeks enforcement of her statutory rights...."), *aff'd,* 289 Or. 73, 611 P.2d 281 (1980); *Bridgeton Education Association v. Board of Education,* 132 N.J.Super. 554, 334 A.2d 376, 378 (1975) ("the fact that an act may constitute [an arbitrable] grievance does not foreclose a court from deciding if the same act also violates a statute;" statutory relief is additional to that provided in the collective bargaining agreement). *See Barry v. Flint Fire Department,* 44 Mich. App. 602, 205 N.W.2d 627, 629, 630 (1973) (when employment related constitutional equal protection claim is alleged, grievance procedure need not be utilized).

---

19. While there are contrary federal cases, they predated *Gardner-Denver Co.* and *Barrentine* and therefore lack current legal vitality. *See, e.g., Satterwhite v. United Parcel Service, Inc.,* 496 F.2d 448, 452 (10th Cir.) (wage dispute submitted to arbitration in accordance with collective bargaining agreement may not later be subject of lawsuit under FLSA), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974); *Dewey v. Reynolds Metal Co.,* 429 F.2d 324, 332 (6th Cir.1970) (Title VII suit may not be brought after grievance finally adjudicated by arbitration), *aff'd by equally divided court,* 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971).

The only state case cited as contrary authority, *McGrath v. State,* 312 N.W.2d 438 (Minn.1981), is distinguishable as its application seems limited to cases involving a general allegation of a violation of constitutional rights, where the violation is not clear and unambiguous; further, the court made it clear that following arbitration, adjudication of the constitutional claim in court should proceed. A similar policy of withholding court action pending arbitration rather than dismissal was expressed in *Lewiston Firefighters Association, Local 785 v. City of Lewiston,* 354 A.2d 154, 164–68 (Me.1976). Whether the superior court in this case could properly have taken similar action with respect to the arbitrable claims presented, and if so the effect to be given the arbitration decision, are questions on which we intimate no view for they have not been briefed or argued.

The judgment of the superior court is REVERSED.

CONNOR, J., not participating.